**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**AT LOUISVILLE**
**CASE NO. 3-13-cv-525-H**

**HAROLD WAYNE BARNES, JR.** **PLAINTIFF,**

**vs.** ***ELECTRONICALLY FILED***

**CSX TRANSPORTATION, INC.** **DEFENDANT.**

---

**PLAINTIFF'S SUPPLEMENTAL MEMORANDUM IN SUPPORT OF PLAINTIFF'S POSITION THAT RULE 23(a)(2)(B) DOES NOT REQUIRE EXPERT REPORTS**

---

## I. INTRODUCTION

Plaintiff Harold Barnes, by counsel, hereby submits his Supplemental Memorandum in Support of Plaintiff's Position That Rule 23(a)(2)(B) Does Not Require Expert Reports as to Plaintiff's identified experts. This Supplemental Memorandum is being filed pursuant to the Order of the Magistrate Judge entered on October 4, 2016. (R. 67, Page ID# 795) The Order directs Plaintiff to "set forth in detail all of the opinions by each of Plaintiff's four expert witnesses along with facts and documents on which each opinion is based." The Order further requires Plaintiff to include in his Memorandum "all case authority in support of its current position on the application of Rule 26(a)(2)(B) and (C)." (*Id.*)

Defendants have sought to strike the testimony of, or require formal reports from, Plaintiff's treating medical providers, including [redacted] and [redacted] neither of whom were retained by Plaintiff to provide expert testimony in this case. Defendants have also moved to strike the testimony of Plaintiff's vocational counselors with the Kentucky Office for the Blind (OFB),[1] who, although not retained by Plaintiff to provide

---

[1] Craig Callihan, MRC, CRC, is a Vocational Rehabilitation Counselor and Andre Ryssemuss, MRC, CRC is an Assistive Technology Specialist. Both are employed by Kentucky Education and Workforce Development Cabinet,

testimony for this litigation, had in fact provided a report of their opinions to CSX.[2] Because the explicit language of Fed. R. Civ. P. 26(a)(2)(B) does not require reports from such treating physicians or counselors, on August 4, 2014, Plaintiff served his expert disclosures pursuant to Rule 23(a)(2)(C), including summaries of the facts and opinions to which each treating expert was expected to testify. (R. 62-3, Plaintiff's Expert Disclosures, Page ID# 733-738).

Thereafter, Defendant filed its Motion to Strike Plaintiff's Experts or In Alternative to Compel Expert Disclosures on September 24, 2014. (R. 24, Page ID# 86). CSX filed it's Renewed Motion to Strike on January 18, 2016. (R. 60, Page ID# 641). Plaintiff filed his Responses in Opposition to the initial and renewed motions on November 4, 2014, and February 5, 2016, respectively, with supporting exhibits. (R. 29, Page ID# 140, and R. 62, Page ID# 700). Those two Responses provide a full discussion of all issues relevant to the Motions to Strike. Because this Court's Order limits the this supplemental memorandum to a discussion of the expert opinions and bases therefore, Plaintiff respectfully refers the Court to those Memoranda for Plaintiff's comprehensive discussion of his opposition to the pending motion, including a discussion of the Plaintiff's good faith compliance and the inappropriateness of sanctions.

For purposes of this Memorandum, Plaintiff will focus on the matters directed by the Court.

## II. EXPECTED OPINIONS

Plaintiff Harold Barnes suffers optic atrophy, a condition diagnosed by Mr. Barnes long time treating [redacted] Mr Barnes went to Kentucky Office

---

Office for the Blind.

[2] See Pl. Ex. 5, R. 62-5, Page ID# 744-746, , the Assistive Technology Services Evaluation Report prepared by OFB and sent to CSX on or about 10-02-12, the date of the evaluation. See also, Pl. Ex. 6, R. 62-6, Page ID# 747-748, Letter from Craig Callihan and Andre Ryssemus (OFB) to Fred Crane (CSX), 02-11-13. These documents contain the opinions that Plaintiff has previously summarized in his Rule 23(a)(2)(C) summaries previously served on Defendant and filed with this Court. (Pl. Ex. 3, R. 62-3, Page ID# 733-738).

for the Blind initially on July 7, 2011, on a referral [redacted] (R. 62-13, Page ID# 766, Pl. Ex. 13, OFB, Callihan Notes, 7-7-11.) The specific purpose of the referral at that time was to obtain the services afforded by OFB's "bioptic driving program." (*Id.*, Page ID#766). Thereafter, Plaintiff received services from the OFB through the ongoing assistance of Craig Callihan, MRC, CRC, Vocational Rehabilitation Counselor, and Andre Ryssemus, MRC, CRC, Assistive Technology Specialist.[3] Prior to and during this time Plaintiff continued to be treated by [redacted] Plaintiff also treated with [redacted] during the same time period. Their expected opinions and observations are set forth below. [4]

**A. Opinions Expected To Be Offered By Kentucky Office For The Blind Vocational Rehabilitation Counselor Callihan and Assistive Device Specialist Reyssemus**

Mr. Callihan and Mr. Reyssemus are employees of Kentucky Office for the Blind (OFB). OFB itself is an office within the Kentucky Education and Workforce Development Cabinet. It was created by the General Assembly as the "state agency responsible for all rehabilitation services for the blind and visually impaired and other services as deemed necessary." KRS 163.470. Establishment of OFB was the outgrowth of the General Assembly's finding "that the provision of industrial evaluation, training, and employment opportunities for individuals who are blind or visually impaired is a valuable and necessary component of vocational rehabilitation services." KRS 163.475. It was pursuant to this authority that Mr. Callihan and Mr. Ryssemus have provided services to Plaintiff in his effort to return to work with Defendant CSX.

---

[3] OFB's ongoing provision of services for Plaintiff are detailed in OFB records which can be found at Plaintiff's Exhibit 4 (Page ID# 739-743), Exhibit 5 (Page ID# 744-746), Exhibit 6 (Page ID# 747-748), Exhibit 13 (Page ID# 765-766), Exhibit 14 (Page ID# 767-770), and Exhibit 15 (Page ID# 771-772). Plaintiff has previously executed a release permitting CSX to obtain all of Plaintiff's OFB records.

[4] As with most experts (treating or retained) other opinions may be offered in the course of testimony depending on examination at trial to explain opinions listed here and below. However, neither Plaintiff nor his counsel has asked any of the experts to offer any opinions beyond the normal scope of his treatment. Rather, the opinions listed here are taken directly from the records of the treating experts. Based on in-person contacts and/or phone conversations with these experts, Plaintiff expects that each expert listed herein will confirm their respective opinions as described below, at the trial of this case.

Plaintiff expects Mr. Callihan and Mr. Reyssemus to provide the opinions set out below at the trial of this case. These opinions are based on the OFB records set out in footnote 3, all of which have been previously supplied to CSX and, as noted, filed with the Court. Rather than provide a summary required by Rule 26(a)(2)(C), Plaintiff provides below a detailed listing of expected opinions as required by the Court's Order of October 4, 2016. (R. 67, Page ID# 795).[5]

Craig Callihan, MRC, CRC, Vocational Rehabilitation Counselor, and Andre Ryssemus, MRC, CRC, Assistive Technology Specialist, are expected to offer the following opinions and factual observations regarding accommodations that would allow Mr. Barnes to perform the functions of Yardmaster:

(1) There are assistive devices that are reasonably available to assist Plaintiff in performing the essential functions of yardmaster as they observed those functions during an on-site inspection of the Louisville Osborne Yard on or about September 20, 2012.

(2) More particularly they are expected to offer the opinion that, with a combination of devices, Mr. Barnes was able to read near-, mid- and far-distance objects. Using the Eschenbach Max Detail (-+3 dpt) glasses and changing the contrast settings using the "ease of access" setting within Windows 7 environment and a 24" monitor, Mr. Barnes was able to function well in navigating around the computer screen desktop and various software programs.

(3) AiSquared Zoom Text screen magnification software at 3-4x magnification with negative contrast, will enable Mr. Barnes to read material of Arial 8pt font.

(4) Even absent screen magnification software, the ease of access center within Windows Vista or Windows might enable Mr. Barnes to navigate the computer system used by the yardmaster at the Osborne Yard.

(5) Regarding split and quad screen views used on the monitors, the ability to toggle between screens to full view would make it easier for Mr. Barnes to see what is being projected.

(6) Also, in the mid- and far-distance ranges, using the Eschenbach Max TV glasses (-+3 dpt), he was able to view and describe various shapes and lettering within 25 feet. As for far distance, Mr. Barnes was able to read the awning of an auto body shop approximately a block

[5] Plaintiff is happy to comply with the Court's Order in a good faith effort to resolve the pending motion. However, by doing so, Plaintiff does not waive his position as set out in his previous Memoranda, that all of his listed experts are treating providers. As such he is only obligated by the Rule to provide a summary of facts and opinions as required by Rule 26(a)(2)(C) and that his experts should, consistent with that rule, be permitted to offer opinions consistent with the summary and their records.

away (1/8 mile) as well as a sign painted on the cab door of a pickup truck at a distance of approximately 50 yards with the use of his Bioptic telescope. In addition, Mr. Barnes can gain access to binoculars that he can use to see what is out on the "bowl" at Osborn.

(7) Regarding print materials, Mr. Barnes performed well with hand-held CCTV magnifiers such as the Freedom Scientific Ruby and HIMS LifeStyle Candy using a negative contrast at various magnification levels. As for a standalone desktop magnification unit, Mr. Barnes did well with the Enhanced Vision DaVinci CCTV using the negative contrast settings and reading Arial 8pt font.

(8) With either a handheld or desktop CCTV magnifier, Mr. Barnes is able to easily read handwritten or print documents. With some magnifying eyeglasses, he is able to read the computer screen. Any accessibility features available in the software or operating systems, along with larger computer monitors, would be helpful. With the bioptic device he uses for driving, he was able to read various items of signage stated and that with continued practice he will be able to use the device for spot checking areas on the yard.

(9) In their observations at the OFB offices of Mr. Barnes' use of these assistive devices, they observed no symptoms of eye fatigue.

(10) Based on the experience of Mr. Callihan and Mr. Reyssemus observing Mr. Barnes with the assistive devices at the OFB offices in or around January of 2013, along with their earlier observations at the Osborn Yard, it is the opinion of both Mr. Callihan and Mr. Reyssemus that with the proper assistive devices Mr. Barnes can carry out the essential job functions of a railroad yardmaster.

**Bases of Opinions and Observations**

The opinions and personal observations listed above are taken directly from a report sent by Mr. Callihan and Mr. Reyssemus of the OFB to Fred Crane at CSX on or about February 11, 2013. That letter was previously filed with the Court as Plaintiff's Exhibit 6 to Plaintiff Response in Opposition to Motion to Strike. (R. 62-6, Page ID# 747-748). These opinions are based on direct observations made by Mr. Callihan and Mr. Reyssemus of the Osborn Yard towers in Louisville in September of 2012, with Fred Crane, CSX's Vocational Rehabilitation Specialist. Those observations are recorded in the "Worksite observation/job analysis" dated September 20, 2012, and previously filed with the Court as Plaintiff's Exhibit 4 to his Response in Opposition to Motion to Strike Experts. (R. 62-4, Page ID# 739-743).

The opinions are also based in part on the observations made by Mr. Reyssemus of Mr. Barnes using the assistive devices at OFB and discussions with Mr. Barnes on or about October 12, 2012. These observations and discussions with Plaintiff are recorded in his Assistive Technology Services Report, filed with the Court as Plaintiff's Exhibit 5 to his Response in Opposition to Motion to Strike Experts. (R. 62-5, Page ID# 774-775)

It is expected that Mr. Callihan and Mr. Reyssemus may also rely on their case notes as part of the bases for the opinions and observations set out above. These case notes were kept by them in their normal course of business and record various activities with respect to services provided to Mr. Barnes. Excerpts of those case notes have been previously filed with the Court and can be found at Plaintiff's Exhibits 13, 14 and 15 to Plaintiff's Response in Opposition to Motion to Strike Experts. (R. 62-13, Page ID# 765-766 (Pl. Ex. 13); R. 62-14, Page ID# 767-770 (Pl. Ex. 14); and R. 62-15, Page ID# 771-772 (Pl. Ex. 15)).

Their opinions may also be based in part on clinical records received by their office from the referring [redacted] his [redacted] and exams. Those records have been supplied to or obtained by CSX during discovery. (Bates No. HB 1166-1214, Pl. Ex. 19, filed under seal) Mr. Callihan and Mr. Reyssemus may also rely on information supplied by Fred Crane with CSX regarding the duties and functions of yardmaster.

Finally, these opinions and observations are also based on the education, training and experience of Mr. Callihan, MRC, CRC as a Vocational Rehabilitation Counselor and Mr. Reyssemus as an Assistive Technology Specialist.

**B. Opinions Expected To Be Offered** [redacted]

As noted above, [redacted] called as a witness in this

case and will be offering opinion testimony under FRE Rule 702 consistent with the [redacted]. It is expected that [redacted]:

(1) Plaintiff has a diagnosis of Bilateral Hereditary Optic Atrophy, Partial Optic Atrophy, a condition involving deterioration or the optic nerve, which carries impulses from the eye to the brain.

(2) [redacted]

(3) [redacted]

(4) [redacted]

(5) [redacted]

(6) [redacted]

(7) [redacted]

(8) [redacted]

(9) [redacted]

(10) [redacted]

(11) [redacted]

[redacted]

(12) [redacted]

(13) [redacted]

(14) Mr. Barnes met the requirements for Kentucky's Bioptic Driving Program.

**Bases of Opinions**

The bases of the opinions and facts upon which [redacted] is expected to rely are qualifications, education and experience. In addition, he is expected to rely on [redacted]. Those records have been supplied to Plaintiff and are marked Bates Nos. 1166-1223. (Plaintiff's Ex. 19, attached, Bates Nos. HB 1166-1223). The [redacted]. These [redacted] were conducted on 07-06-06 (HB 1205), 06-23-11 (HB 1199-1201), 09-21-11 (HB 1172), 08-23-12 (HB 1187), 07-25-13 (HB 1166), 09-28-12 (HB 1173).

It is expected that [redacted] may also rely on [redacted] (HB 1206-1208), 06-23-11 (HB 1196-1198), 09-21-11 (HB 1178-1180), 08-23-12 (HB 1188-1189, 1195), 07-25-13 (HB 1167-1170). Additionally, [redacted] (HB 1212-1214).

Further, it is expected that [redacted] may also rely on [redacted] 09-28-12 (HB 1173) and 12-18-12 (HB 1171).

In addition to the above, [redacted] is expected to rely on his [redacted] 06-25-12 (HB 1185). Finally, it is expected [redacted] may also rely

on patient information and history provided by Mr. Barnes. (HB 1202-1203, 1209-1210).

All of the above information has been supplied to Defendant in the course of discovery.

**C. Opinions Expected To Be Offered By Dr. [redacted] Ph.D.**

As noted above, [redacted] will be called as a witness in this case and will be offering opinion testimony under FRE Rule 702 [redacted] records can be found out HB 1292 to HB 1320 (attached as Plaintiff's Exhibit 20).[6] It is expected that [redacted] will offer the following opinions and observations:

1) [redacted]. (See HB 1294-1298; 1302-1303; 1305-1308; 1310-1311; 1313-1320).

2) [redacted] (HB 1316-1320).

3) [redacted] (HB 1294-1295; 1303)

4) Due to his not returning to work, [redacted] (See HB 1294-1298; 1311)

5) [redacted]. (HB 1294 to 1298; 1303; 1308)

6) [redacted] (HB 1298).

7) [redacted]

[redacted] opinions will be based qualifications, education and experience. In addition it is expected that [redacted] [redacted]

[6] All references to HB bates numbers cited in the list of [redacted] opinion sand the underlying bases for his opinions are contained in Palintiff's Ex. 20, filed under seal.

March 8, 2008 to May 22, 2014, and his records contained in HB 1292 to 1320. [redacted] opinions are commensurate with the level of emotional distress Mr. Barnes has felt because of his failure to return to work.

[redacted] opinions [redacted] (HB 1294 to HB 1296); the [redacted] (HB 1297 to 1298); [redacted] (HB 1302); [redacted] (HB 1303); [redacted] (HB 1305); [redacted] (HB 1306); [redacted] (HB 1307); [redacted] (HB 1308); [redacted] (HB 1310); [redacted] (HB 1311); [redacted] (HB 13131); [redacted] (HB 1314); [redacted] (HB 1316 to 1319); [redacted] (HB 1320).

Finally, [redacted] (HB 1294 to 1296); 03/19/08 (HB 1299); 04/09/08 (HB 1300); 05/07/08 (HB 1301); 10/29/08 (HB 1304); 07/01/09 (HB 1309); and 11/18/09 (HB 1312) [redacted].

As demonstrated in [redacted]'s records, [redacted] he was not retained for purposes of this lawsuit and is only testifying

commensurate with this [redacted]

Counsel for Plaintiff confirmed this in a phone call on October 7, 2016.

## III. ARGUMENT

### A. BY ITS UNAMBIGUOUS TERMS RULE 26 (a)(2)(B) DOES NOT REQUIRE REPORTS FROM NON-RETAINED TREATING EXPERTS

Rule 26 provides in relevant part,

> **(B)** *Witnesses Who Must Provide a Written Report*. Unless otherwise stipulated or ordered by the court, this disclosure must be accompanied by a written report--prepared and signed by the witness--if the witness is ***one retained or specially employed to provide expert testimony*** in the case or one whose duties as the party's employee regularly involve giving expert testimony.

Rule 26(a)(2)(B). (Emphasis added).

None of the above experts whose testimony Defendant attempts to strike was retained by Plaintiff or his counsel for this litigation. Plaintiff has not asked these expert to expand their opinions beyond opinions formed during the normal course of treatment (as to [redacted] and [redacted] or during the normal course of the provision of vocational services (as to OFB counselors Callihan and Reyssemus). It follows that none of the above listed treating providers is subject to the report requirements of 26(a)(2)(B).

Plaintiff began treating with [redacted] and [redacted] in July 2006 and March 2008, respectively. Similarly, Plaintiff began receiving vocational rehabilitation counseling from Craig Callihan, MRC, CRC, and Andre Ryssemus, MRC, CRC, with the Kentucky Office for the Blind, on or about July of 2011.[7] In fact, as will be discussed below, their reports regarding their initial onsite inspection were tendered to CSX prior to the initiation of the EEOC Complaint. During the period of time they developed these reports, there was recurring communications with Fred Crane of CSX. In short, these treating medical providers and vocational counselors began

[7] Plaintiff's EEOC charge in this matter was not filed until

treating Plaintiff long before this suit was initiated and well before Plaintiff filed his Charge of Discrimination in this matter.[8]

### 1. Plaintiff's Experts Are Treating Providers Exempt From The Report Mandate Of Rule 26(A)(2)(B).

The Sixth Circuit has made it quite clear that written reports required by retained experts under this Rule 26 would have no application to the Plaintiff's treating experts disclosed above. "Rule 26(a)(2)(B) by its terms provides that a party needs to file an expert report from a treating physician only if that physician was retained or specially employed to provide expert testimony." *Fielden v. CSX Transp., Inc.*, 482 F.3d 866, 869 (6th Cir. 2007)(internal quotes omitted).

In *Fielden*, the plaintiff brought a FELA claim regarding an injury at CSX. Plaintiff disclosed two treating physicians who had "information relevant to Mr. Fielden's employment history. . . and his medical condition resulting from [CSXT's] negligence." *Id.* at 868. The plaintiff had also responded to interrogatories regarding persons and documents required by Federal Rule of Civil Procedure 26(a)(2)(A) and (B), listing the same two treating physicians that would testify regarding causation. Plaintiff provided no 26(a)(2)(B) reports to CSX. However, plaintiff's counsel requested a "detailed narrative report" from Dr. Fisher (one of the plaintiff's treating physicians) and an opinion regarding causation ***after*** the deadline for expert reports had passed. The district court granted the defendant's motion for summary judgment and excluded the plaintiff's treating experts' opinions. The district court ruled that counsel's letter requesting a 26(a)(2)(B) report from one of plaintiff's own treating physician's demonstrated that plaintiff's counsel considered his treating physicians to be experts under Rule26(a)(2)(B), and thus considered them retained experts. As no report was filed within the time set by the court,

---

[8] Even treatment was obtained around the time of filing of a claim or charge would still be exempt from Expert Report requirements of (a)(2)(B). See discussion regarding *Downey v. Bob's Discount Furniture Holdings, Inc.*, 633 F.3d 1, 6 (1st Cir. 2011), p. 17 below.

both experts were struck leaving Plaintiff with no testimony regarding causation. Defendant's summary judgment motion was then granted. *Id.* at 868-869.

The Sixth Circuit reversed, specifically ruling that plaintiff's treating physicians were not subject to the report mandate of 26(a)(2)(B):

> Reversal is required in this case because Rule 26(a)(2)(B) ***does not require an expert report from a treating physician*** in the context of this FELA case where the proposed testimony was that a patient's extensive use of a "plate jack" at work caused the patient's carpal tunnel syndrome. Permitting a treating physician to testify on causation in this context is consistent with the plain language of Rule 26(a)(2)(B) and does not lead to the perverse results that district courts have recognized in other contexts.
>
> Rule 26(a)(2)(B) by its terms provides that a party needs to file an expert report from a treating physician ***only if that physician was "retained or specially employed to provide expert testimony.***" In this case, Fielden did not retain Dr. Fischer for the purposes of providing expert testimony because there is evidence that Dr. Fischer ***formed his opinions as to causation at the time that he treated Fielden*** and ***there is no evidence that Dr. Fischer formed his opinion at the request of Fielden's counsel***. The Advisory Committee Notes also support the conclusion that Fielden did not need to file an expert report from Dr. Fischer. The Note to Rule 26 states that "[a] treating physician ... can be deposed or called to testify at trial ***without any requirement for a written report."*** Fed.R.Civ.P. 26(a), cmt. 1993 Amendments, subdivision (a), para. (2). Under a straightforward reading of the rule and its advisory note, Fielden did not need to file an expert report from Dr. Fischer.
>
> This conclusion is supported by the obvious fact that doctors may need to determine the cause of an injury in order to treat it. Determining causation may therefore be an integral part of "treating" a patient.

*Fielden*, 482 F.3d at 869-870. It is noteworthy that the Court reversed the holding regarding the exclusion of treating expert opinions, despite the fact that the plaintiff's counsel specifically requested a "detailed narrative report" and opinion regarding causation.

In the present case, Plaintiff has not sought such narrative reports or opinions from any of his treating experts. Rather, Plaintiff and his counsel are relying on the opinions and observations already developed and contained in the treating providers' records. As was the case

in *Fielden,* Plaintiff has made no request for opinions beyond that developed in the normal course of providing medical treatment or vocational services. The detailed opinions and description of the bases for those opinions listed above are based entirely on records developed by treating providers in the normal course of the treatment of, or in provision of services by each of them. *Id.*.

The rule enunciated in *Fielden* has been consistently followed within and outside of this Circuit. This has held true even after the 2010 amendments to Rule 26. For example, in *Hinkle v. Ford Motor Co.*, 2013 WL 1992834 (E.D. Ky. May 13, 2013) Judge Reeves held,

> a Rule 26(a)(2)(B) report 'is not required when a treating physician testifies within a permissive core on issues pertaining to treatment, based on what he or she learned through actual treatment and from the plaintiff's records up to and including that treatment.'

*Id.* at *2, *quoting Fielden,* 482 F.3d at 871. The Court in *Hinkle* then delineates the factors used to consider whether opinions offered by treating experts relating to causation issues come within the exception to requirement of a formal written report.

> 'Courts attempting to determine whether a physician's testimony regarding causation falls into this 'core' have considered factors such as: (1) whether the physician reached his conclusion at the time of treatment; (2) whether the opposing party would be surprised by the testimony; (3) whether the condition at issues leaves room for debate as to the specific ailment and its sources; (4) whether the physician relied upon ordinary medical training in drawing his conclusion; and (5) whether the physician will rely on tests, documents, books, videos, or other sources not relied upon during treatment.'

*Id.*, 2013 WL 1992834 , at *2, *quoting, Gaspar v. Dicks,* 2011 U.S. Dist. LEXIS 136571, at *11,2011 WL 5975061 (E.D.Mich. Nov. 29, 2011).[9] Courts considering the application of Rule 26(a)(2)(B) have held that it is only "when the treating physician's testimony strays from the core of the physician's treatment, [that] Rule 26(a)(2)(B) requires the filing of an expert report from

[9] *Hinkle also cites, Gorajczyk v. City of St. Clair Shores,* 2010 U.S. Dist. LEXIS 83765, at *12–13, 2010 WL 3245432 (E.D.Mich. Aug. 17, 2010) in support of this proposition.

that treating physician." *Fielden* 482 F.2d at 870.[10] In *Fielden,* the Sixth Circuit explained, that "[u]nder this purposive reading of Rule 26, a report is not required when a treating physician testifies within a permissive core on issues pertaining to treatment, based on what he or she learned through actual treatment and from the plaintiff's records up to and including that treatment." *Id.* at 871.

*Hinkle* applied this guidance from the Sixth Circuit by denying a motion to strike an expert in circumstances substantially the same as those presented her. More particularly, Judge Reeves concluded in *Hinkle* that, "because [the treating physician's] opinions concerning Turner's left wrist and upper left extremity are based on his 'personal knowledge' and are within the 'permissive core' of his treatment of Turner ***a Rule 26(a)(2)(B) expert report is not required***." *Id.* 2013 WL 1992834 at *4. (Emphasis added). *Cf., Lattuga v. U.S. Postal Service*, 2010 WL 4918769, at *1 (S.D. Ohio Nov. 29, 2010) ("the Motion in Limine is denied insofar as it seeks to exclude ***observations and opinions formed during treatment*** by Drs. Pledger and McGuire. Furthermore, they may testify to opinions about causation to the extent those opinions relate to their treatment and ordinary medical training in the way Dr. Fischer's opinion about causation of carpal tunnel syndrome by use of the plate jack related to his treatment and ordinary medical training, but not beyond that." (Emphasis added))

So it is here. All of [redacted] and [redacted] opinions listed above are opinions developed in the normal course of treatment of Plaintiff. Likewise, all of the opinions of Mr. Callihan and Mr. Reyssemus listed above were all developed in the normal course of services they provided to Mr. Barnes consistent with their statutory mandate to provide vocational and

---

[10] *Citing, Sellers v. Butler*, 2006 WL 2714274, at *4 (D.Kan. Sept.22, 2006); *Martin*, 215 F.R.D. at 557 n.3; *Bell v. Ill. Cent. Ry. Co.*, 2006 WL 3841544, at *4 (S.D.Ill.Dec.14, 2006). *Wreath v. United States*, 161 F.R.D. 448, 450 (D.Kan.1995). *See generally, First Nat'l Mortg. Co. v. Fed. Realty Inv. Trust*, 2006 U.S. Dist. LEXIS 57113, at *45 (N.D.Cal. Aug. 2, 2006).

rehabilitative services to citizens of the Commonwealth of Kentucky." *See* KRS 163.470. Consistent with *Fielden* and *Hinkle* no 26(a)(2)(B) report is required.

**2. Plaintiff's Counsel Has No Legal Authority To Require Mr. Callihan And Mr. Ryssemus To Produce Reports Or Otherwise Engage Their Services As Experts.**

As noted above, Vocational Rehabilitation Counselor Craig Callihan and Assistive Device Specialist Andre Reyssemus are employed by the Kentucky Office for the Blind, a division within the Education and Workforce Cabinet of the Commonwealth of Kentucky. The services they are permitted to provide are established by statute and implementing regulations. Nothing in those laws permits the Office for the Blind or its employees to be privately engaged as experts in litigation. Indeed, KRS 163.450 sets the mission for OFB:

> The purpose of KRS 163.450 to 163.470 is to provide for a separate and specialized agency for the blind to provide for and improve the rehabilitation of the blind and visually impaired citizens of the Commonwealth of Kentucky in order that they may increase their social and economic well-being and the productive capacity of the Commonwealth and the nation.

Moreover, KRS 163.480(1) and (2) expressly limits the persons or entities with whom OFB may contract to only those "non-profits" who provide services to "the blind or visually impaired" directed primarily to rehabilitation services, evaluation, training, and employment opportunities. Nothing in the statutory scheme would authorize Office for the Blind employees to enter into private contracts to provide expert reports or testimony. The worksite observations and reports produced to CSX in this litigation all preceded filing of this suit. All of these reports as described above were provided as part of the normal services provided to the visually impaired, in this case to Plaintiff Harold Barnes. (See Worksite Observations 09-20-12, Pl. Ex. 4, R. 56-4, Page ID# 454-458; Assistive Technology Evaluation Report, 10-02-12, Pl. Ex. 5, R. 56-5, Page ID# 459-461; Callihan and Reyssemus Letter to Fred Crane, 02-11-13, Pl. Ex. 6, R.

56-6 Page ID# 462-463). All of these reports reflect services provided by OFB to Plaintiff in the normal course of providing vocational services to Plaintiff consistent with OFB's statutory mission and limitations.

Plaintiff is aware of no authority that would require a Rule 26(a)(2)(B) report from such governmental experts. Of course, even if OFB were put on the same footing with private experts, the Sixth Circuit's decision in *Fielden* would foreclose an argument that OFB vocational experts who provided ongoing services to Plaintiff would be obligated to produce 26(a)(2)(B) reports. That is, all the opinions to be offered by them were developed "within a permissive core on issues pertaining to treatment, based on what he or she learned through actual treatment and from the plaintiff's records up to and including that treatment." *Hinkle*, 2013 WL 1992834, at *2, *quoting Fielden*, 482 F.3d at 871.

Although not involving governmental experts, the decision of the First Circuit in *Downey v. Bob's Discount Furniture Holdings, Inc.*, 633 F.3d 1, 6 (1st Cir. 2011) is instructive in that it followed the Sixth Circuit's holding in *Fielden.* In *Downey,* the defendant attempted to exclude the expert opinion of an exterminator hired by the plaintiffs to rid their home of bed bugs alleged to have been caused by a bedroom set they purchased from defendant. The district court excluded the exterminator's opinion testimony because of plaintiffs failure to produce a 26(a)(2)(B) written report. The First Circuit, relying on *Fielden,* reversed, and held:

> Like a treating physician—and unlike a prototypical expert witness—Gordinier [the exterminator] was not retained or specially employed for the purpose of offering expert opinion testimony. Rather, he was "an actor with regard to the occurrences from which the tapestry of the lawsuit was woven." *Id.* Put another way, his opinion testimony arises not from his enlistment as an expert but, rather, from his ground-level involvement in the events giving rise to the litigation. Thus, he falls outside the compass of Rule 26(a)(2)(B). *See Fielden v. CSX Transp., Inc.*, 482 F.3d 866, 869 (6th Cir.2007).

*Id.* at 6. The first Circuit adopted the Sixth Circuit's approach and found that the expert's opinions were formed as part of his engagement to find and treat the cause of the infestation.

The Court found the report requirement inapplicable in that circumstance.

> Gordinier [expert] was called to the plaintiffs' home to inspect and treat the infestation. ***On the day after his initial inspection***, he prepared and transmitted a report to the defendant in hopes of convincing the defendant to accept responsibility and defray the costs of extermination (treatment). This sequence of events leaves no doubt but that Gordinier formed his opinion about causation (that is, about the defendant's responsibility for the infestation) based on his personal knowledge and information gleaned in the course of his initial inspection and related efforts to remediate the problem. Accordingly, the report requirement of Rule 26(a)(2)(B) did not pertain to Gordinier's causation opinion.

*Id.* at 8.[11] It did not matter that the expert himself sent a report to the prospective defendant the ***day after his inspection.*** Such was insufficient to convert him to a retained expert under the Rule.

The district court in *Orchestratehr, Inc. v. Trombetta*, 2016 WL 4563348, at *14 (N.D. Tex. Sept. 1, 2016) followed *Downey* in rejecting the motion to exclude experts who had not served 26(a)(2)(B) reports. The Court in *Trombetta* explained,

> "Bass's expert testimony is based entirely on his 'firsthand knowledge of activities [he] was personally involved in before the commencement of this lawsuit and during the course of [his] work as President of OrchestrateHR and Vivature ***as the lawsuit progressed.*** Therefore, ***he was not required to submit a report under Rule 26(a)(2)(B)***, and the Court will not exclude his testimony on this basis.

*Id.* *14. (Emphasis added).

Likewise here, the Office for the Blind, through Messrs. Callihan and Reyssemus, prepared their reports described above based on their personal knowledge and information gleaned in the course of the provision of their vocational counseling services. The only material distinction is that Callihan and Reyssemus are employees of the Commonwealth of Kentucky and cannot be privately engaged. The rationale and rule of interpretation announced in *Fiedlen*

[11] The First Circuit noted that the claim they reviewed pre-dated the 2010 Amendment to Rule 26. Nevertheless, the Court concluded that the 2010 amendment "reinforces our interpretation." *Id.* 633 F. 3d at 7. The Court further noted the advisory committee explanation that a "witness who is not required to provide a report under Rule 26(a)(2)(B) may both testify as a fact witness and also provide expert testimony under Evidence Rule 702 , 703, or 705." *Id.*

and *Downey* would also fully undercut CSX's demand here that [redacted] and [redacted] be struck as experts for Plaintiff.

As Plaintiff will be presenting the testimony of his experts and confining their respective opinions to those that each of them developed in the normal course of the treatment or provision of services, *Fielden, Downey, Hinkle* and the other authority cited above compels the denial of Defendant's motion to strike Plaintiff's experts.

**3. Exclusion of Plaintiff's Experts is Particularly Inappropriate As Plaintiffs Has Served his Rule 23(a)(2)(C) Disclosures And Produced Or Made Available To Defendant All Expert Records.**

In rejecting a sanction of excluding a party's expert, the Court in *Hinkle, supra,* noted, among other things, that the Rule is intended "to limit unfair surprise." Judge Reeves explained his refusal to exclude the plaintiff's expert, noting that the defendant "did not request nor take a discovery deposition of [plaintiff's experts]." *Hinkle v. Ford Motor Co*., *supra*, 2013 WL 1992834, at *6. The Court explained further that,

> Further, [plaintiffs] Stafford and Turner provided Ford with ***signed medical authorization*** which allowed it to obtain records and medical bills directly from each of the plaintiffs medical providers. Pursuant to this agreement, ***Ford's counsel obtained all medical records*** and bills directly from the providers and then supplied copies to plaintiffs' counsel. Under this arrangement, Ford had the ability to make itself aware of the contents of all of the plaintiffs' medical records and bills.
>
> As previously discussed, Rule 26(a)(2) is intended to limit unfair surprise regarding expert's testimony. Here, it appears that Ford was made aware of the parameters of the proposed testimony of Dr. Baker and Dr. Bilbo through the plaintiffs' Rule 26(a)(2)(C) disclosures and through copies of all medical records from the plaintiffs' medical providers. Thus, in addition to the above analysis, to the extent that the Court has denied the defendant's motion to strike, the Court also finds that the plaintiffs' failure to comply with Rule 26(a)(2)(C) is harmless. Therefore, it does not warrant exclusion under Rule 37(c). *Bessemer & Lake Erie R.R. Co.,* 596 F.3d, at 370.

*Id.* (Emphasis added).

So too here, Plaintiff provided CSX with his 26(a)(2)(C) disclosure.[12] He signed releases permitting CSX to obtain all records from his four treating providers and provided records in his possession. CSX has, to date, declined the opportunity to depose any of these experts. *Hinkle* forecloses Defendant's argument. CSX cannot reasonably argue that it will be surprised by the expected testimony of Plaintiff's experts as reflected in those records. Accordingly, consistent with *Hinkle* Defendant has failed to demonstrate that it is entitled to the sanction of excluding Plaintiff's experts. The pending motion should be, therefore, denied.

**CONCLUSION**

The rules of interpretation enunciated in *Friedlen* and *Downey* and applied in *Hinkle* militate against granting CSX's motion to strike [redacted], Craig Callihan, Andre Reyssemus and [redacted] as experts permitted to testify within the scope of their treatment of and services provided to Mr. Barnes. Defendant's renewed motion to strike should be accordingly denied.

Should this Court disagree, then it should afford Plaintiff sufficient time to at least attempt to obtain reports otherwise compliant with Rule 26 (a)(2)(B). Defendant can suffer no prejudice from this as there is no impending trial and discovery has otherwise been stayed pending ruling on the motion to strike.

Respectfully submitted,

/s/ Michael J. O'Hara
MICHAEL J. O'HARA (KY 52530) (OH 0014966)
O'HARA, RUBERG, TAYLOR, SLOAN & SERGENT
25 Town Center Boulevard, Suite 201
Covington, KY 41017
(859) 331-2000
FAX (859) 578-3365
mohara@ortlaw.com (Michael O'Hara)

[12] To the extent Defendant repeats its argument that the disclosures were inadequate, the very detailed lists of opinions and bases for opinions set out above that goes well beyond the mandate of Rule 26(a)(2)(C), completely undercuts that argument.

BENJAMIN T.D. PUGH (OH 0086781)(KY 94032)
PUGH & ROACH, Attorneys at Law, PLLC
28 West Fifth Street
Covington, Kentucky 41011
(859) 291-5555
FAX (859) 287-2600
email: tom@prlaw.legal
ATTORNEYS FOR PLAINTIFF

**CERTIFICATE OF SERVICE**

I hereby certify that on November 28, 2016, I electronically filed the foregoing with the clerk of the court by using the CM/ECF system, which will send a notice of electronic filing to the following:

M. Scott McIntyre, Esq.
Carrie Dettmer-Slye, Esq.
Baker Hostetler
312 Walnut Street
Suite 3200
Cincinnati, OH 45202-4074

/s/ Michael J. O’Hara________________________
MICHAEL O’HARA
O’HARA, RUBERG, TAYLOR, SLOAN & SERGENT